TEMPLETON PATENTS, LTD., Plaintiff-Appellant,

v.

J. R. SIMPLOT COMPANY, Defendant-Appellee (two cases).

Nos. 18899, 18900.

United States Court of Appeals
Ninth Circuit.

Sept. 4, 1964.

W. Brown Morton, Jr., John T. Roberts, Washington, D. C., William H. Langroise, Langroise, Clark & Sullivan, Boise, Idaho, Pennie, Edmonds, Morton, Taylor & Adams, New York City, for appellant.

Edward B. Beale, Robert A. Doherty, Washington, D. C., Jess B. Hawley, Jr., Boise, Idaho, Beale & Jones, Washington, D. C., Lloyd E. Haight, Hawley, Troxell, Ennis & Hawley, Boise, Idaho, for appellee.

Before POPE, HAMLEY and MERRILL, Circuit Judges.

MERRILL, Circuit Judge:

Appellant has brought two suits against appellee in the District Court for the District of Idaho: one for infringement of three United States patents owned by appellant; the other for breach of an alleged contract licensing use of the patents, or, in the alternative, for damages in quasi-contract on the theory of unjust enrichment. The suits were consolidated for trial. This appeal is from judgment of the District Court in favor of appellee as to both suits.

The opinion of the District Court, filed March 4, 1963, is to be found in 220 F.Supp. 48 (D.Idaho 1963). In major part we accept the reasoning of the District Court and our opinion is merely supplemental thereto. A full reading of that opinion is thus necessary if our rulings are to be understood and accordingly we see no need to repeat here the facts which are fully set forth in that opinion.

The three patents were, respectively, referred to by the District Court as the

"Faitelowitz," the "Volpertas" and the "Rivoche" patents. They deal with a process for making a dehydrated potato powder which will, when combined with warm milk or water, readily reconstitute into palatable mashed potatoes. Appellee is one of the leading manufacturers of this product in the United States.

In rendering judgment for appellee in the suit for infringement, the District Court held the Faitelowitz and Volpertas patents not infringed, since, it held, they claimed a method of accomplishing two-stage dehydration by application of heat which was different from the add-back method [1] used by appellee. While the Volpertas patent specifications do clearly disclose the add-back method used by appellee, the Court held that file wrapper estoppel prevented appellant from contending that the claims were broad enough to include such method. As to Rivoche the Court held that the alleged improvement over Faitelowitz and Volpertas was not invention.

For the reasons set forth by the District Court in its opinion, we agree with its judgment as to the Rivoche patent. For the reasons set forth in its opinion, as here supplemented in our discussion of Faitelowitz, we agree with its conclusions as to Volpertas.

As to the basic Faitelowitz patent, appellant strenuously contends on appeal that the District Court has construed its claims far too narrowly in holding them confined to a method of drying by application of heat. Claim 1, the basic claim, is set forth in the margin.[2]

Appellant asserts that the claim's limitations on the temperature at which drying is to take place do not mean that drying must take place by application of heat; that drying by any of the commonly known methods is includible under the language of the claim; that while Faitelowitz did in fact practice his invention by heat-drying, it is the language of the claim and not the manner in which it is practiced which determines its limits. The invention claimed, it is asserted, is of the two-stage method of dehydration, no matter by what specific process of drying it is accomplished. This contention the District Court, at page 53 (220 F.Supp.), dismissed as unpatentable principle.

It may well be that the District Court has construed the claim too narrowly; that it does state something more than unpatentable principle, and that too much was read by the court into the temperature limitation. This we need not decide, for to read the claim as applying to appellee's add-back process would be to broaden it beyond permissible limits.

The dehydration of foods by add-back is old in the art. Such was the ruling of the Examiner in rejecting the original Volpertas claims covering this method. The Examiner then cited among other earlier patents one which dealt with adding starch to pumpkin pulp to absorb moisture from the pulp, and then drying the resultant mixture by heat to produce a powder which, when reconstituted, could be used in making pies. Another dealt with mixing banana pulp with a suitable ground absorbent and further drying the mixture by cooking it.

It would appear abundantly clear that application of this well-known method of dehydration to cooked potatoes would

---

1. By "add-back" is meant adding some of the fully dried product to the newly-mashed potatoes and allowing absorption to take place to reduce the level of moisture of the entire mixture.

2. Claim 1 states:
   "A method of reducing potatoes and other starch-containing vegetables to the form of a dry powder in which the starch is preserved in its initial form which comprises cooking the vegetables at a temperature which must not substantially exceed 100° C., cutting the cooked vegetables into small pieces, partially drying the pieces, at a temperature which also must not substantially exceed 100° C. until they have lost at the most about 60% by weight of their initial water-content, reducing the partially dried pieces to the form of a moist powder and further drying the moist powder, at a temperature which must not greatly exceed 80° C., until it has a water-content of approximately 10–15% by weight."

not constitute invention and that the use of add-back for this purpose could not in itself form the basis for a patent.

Yet it would, under appellant's construction of Faitelowitz, constitute infringement of that patent. By its very nature, add-back requires a two-stage process of dehydration. Add-back does not remove moisture so much as spread it. The resulting moist powder must of necessity be subjected to further drying. Any commercially feasible use of add-back, then, would require the two-stage process claimed by Faitelowitz.

■ It would indeed appear that in discovering the effect of two-stage dehydration upon the cellular structure of potatoes Faitelowitz made a discovery of major importance to the industry. It would also appear, however, that as to add-back all this discovery did was to supply a scientific explanation of why this already well-known method of drying (with its built-in, two-stage process) was particularly well suited to the dehydration of potatoes. Appellant may not, in this fashion, bring within his patent monopoly a principle otherwise available to the public. Le Roy v. Tatham, 55 U.S. (14 How.) [155] 156, 174, 14 L. Ed. 367 (1852); Funk Bros. Seed Co. v. Kalo Co., 333 U.S. 127, 68 S.Ct. 440, 92 L.Ed. 588 (1948).

Irrespective of any other limits upon the Faitelowitz claims, we conclude that they may not be read to cover the process utilized by appellee; that the District Court accordingly was correct in holding that appellee was not in infringement of Faitelowitz.

In the infringement suit, judgment is affirmed.

■ In rendering judgment for appellee in the suit on contract the District Court concluded that there had been no meeting of the minds of the parties and that no oral contract existed. Further, it was of the view that if there had been such a contract, cause of action for its breach accrued at the very latest in 1954 and was at the time suit was brought in 1960 barred by Idaho's four-year statute of limitations. Idaho Code, § 5-217 (1947). As to the alternate claim in quasi-contract for unjust enrichment, the Court concluded that the cause of action, if any, also accrued at the latest in 1954, and was likewise barred by the statute of limitations. In all respects, for the reasons stated by the Court, we agree with its conclusions.

■ Before us appellant continues to assert that throughout its dealings with appellee, and until May, 1956, the Faitelowitz patent was held by the Alien Property Custodian; that accordingly no cause of action could have accrued until its release to appellant in May, 1956. We cannot agree.

If, indeed, there was any oral licensing agreement in 1954, it is abundantly clear that by its terms it required payment of royalties notwithstanding the future uncertainty created by the Alien Property Custodian problem, and that that problem, if it arose, was to be met in other ways. Such were appellant's consistent demands throughout negotiation.

■ As to the claim of unjust enrichment, this was based not upon the existence of any license but upon value conferred through disclosures and assistance given by appellant upon the mistaken assumption that a license contract existed or would be consummated. Whether the Faitelowitz patent was or was not in appellant's hand was not material to this claim. The Alien Property Custodian problem could only have created uncertainty as to the future value to appellee of the disclosures made and the extent of benefit conferred. It thus did not delay the accrual of appellant's cause of action.

In the contract suit, judgment is affirmed.